UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
:
KAREN P. ZELLNER, :
: CASE NO. 1:11-CV-2796
Plaintiff, :
:
v. : OPINION & ORDER
: [Resolving Doc. No. 28]
SIGNATURE HEALTH SERVICES :
MANSFIELD LLC, :
:
Defendant. :
:
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this age discrimination case, Plaintiff Karen Zellner sues her former employer, Defendant Signature Health Services-Mansfield LLC ("Signature Health"), after she was fired. Zellner alleges that Signature Health treated her differently than other similarly situated, younger employees. Signature Health, meanwhile, contends that it terminated Zellner for contravening orders and compromising patient care. Signature Health now moves for summary judgment as to Zellner's age discrimination claim.[1]

For the reasons that follow, the Court **DENIES** Signature Health's partial motion for summary judgment.

**I. Background**

Signature Health is a home health care company that provides nursing services to homebound patients. Zellner began her employment with Signature Health in September 2003 as a licensed

---

[1] Signature Health's motion for summary judgment as to Zellner's Ohio public policy claim is due to be filed by January 28, 2013. Plaintiff's response is due February 4, 2013. [Doc. 42.]

Case No. 1:11-CV-2796
Gwin, J.

practical nurse (LPN). [Doc. 28, at 3.] Signature Health hired Zellner on an "as needed basis" meaning that Zellner was not guaranteed a minimum number of work hours. [*Id.*] In 2007, 2008, and 2009, Zellner received fairly positive reviews from Signature Health.

In 2006, Signature Health hired Pat Long, who eventually became the Director of Medicare Services and Marketing. Long also supervised Zellner, and completed some of Zellner's annual reviews. [Doc. 31, at 2.] Over the next four years, Zellner's workload gradually diminished; she reported having her annual income decrease by close to 75% from 2007 to 2010. [*Id.* at 3.]

From 2008 until 2010, Signature Health documented a series of alleged company infractions by Zellner. These included entering the home of a patient when the patient was out [*id.* at 4], not taking the temperature of a patient [doc. 28, at 3], refusing to have a flexible schedule [*id.* at 4], and committing medication "set-up" errors [*id.* at 5]. For her part, Zellner complained of harassment from Long, and as well as being retaliated for making that complaint. [Doc. 31, at 5.]

On July 30, 2010, there was some confusion surrounding the proper dosage of a patient's medications. According to Zellner, she corrected an error that had previously been made that potentially endangered the patient's life. According to Signature Health, Zellner told the patient about the error, and then was insubordinate during the ensuing investigatory meeting. Signature Health says that Zellner did not review a physician's order prior to entering the patient's home, which caused the confusion. [Doc. 28, at 6.] Signature Health says that any failure to do so was a deviation from Defendant's policy, and thus the "final straw" leading to Zellner's termination on August 12, 2010.[2/] [*Id.*] In its record of termination action, Signature Health listed "unprofessional

---

[2/] There is some dispute in the record over whether Zellner was replaced. This is largely irrelevant, however, given that the basis of Zellner's discrimination theory is based on differential treatment as opposed to replacement by an employee outside the protected class.

Case No. 1:11-CV-2796
Gwin, J.

conduct," "poor documentation," "failure to maintain professional boundaries" and "failure to follow policy of reviewing patient updates" as its reasons for terminating Zellner. [Doc. 31-3, at 1.] Zellner was 53 years old at the time of her termination. [Doc. 1-1.]

On October 12, 2010, Zellner filed her charge of discrimination with the Ohio Civil Rights Commission. [Doc. 1-1, at 1.] In it she complained only of age discrimination resulting in discharge or termination. On December 23, 2011, the Equal Employment Opportunity Commission dismissed the charge and issued its right to sue letter. [Doc. 1-4, at 1.] Zellner commenced this lawsuit on December 27, 2011, as an age discrimination class action lawsuit with two other plaintiffs. [Doc. 1.] Zellner generally alleged that Signature Health treated her differently than its younger nurses, who committed many of the same policy infractions but without the ensuing discipline. Zellner's co-plaintiffs eventually settled with Signature Health and this Court dismissed their claims. [Doc. 38.]

Prior to that dismissal, Signature Health filed the instant motion for summary judgment as to all three plaintiffs. [Doc. 28.] On January 8, 2013, Zellner filed her amended complaint, wherein she added a claim for wrongful termination in violation of Ohio public policy. [Doc. 39.] The motion for summary judgment remained pending, and became ripe for adjudication on January 7, 2013. On January 17, 2013, this Court granted Defendant Signature Health leave to file a supplemental motion for summary judgment as to the public policy claim. [Doc. 42.] That motion, when ripe, will be considered separately.

## II. Legal Standard

Under Federal Rule of Civil Procedure 56(a), a grant of summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

Case No. 1:11-CV-2796
Gwin, J.

judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden to show the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). In deciding a motion for summary judgment, the Court "draws all reasonable inferences in favor of the nonmoving party." *Lenscrafters, Inc. v. Robinson*, 403 F.3d 798, 802 (6th Cir. 2005) (citations omitted).

### III. Discussion

In the absence of direct evidence[3]—as is the case here—a plaintiff may establish a *prima facie* case of age discrimination by showing that she: (1) was at least 40 years old at the time of the alleged discrimination; (2) suffered an adverse employment action; (3) was qualified for the position; and (4) "was either replaced by a substantially younger person, or was treated less favorably than a similarly situated employee from outside the protected class." *McElroy v. Philips Med. Sys. N. Am., Inc.*, 127 F. App'x 161, 166 (6th Cir. 2005). Once a plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the discharge. The burden then shifts back to the plaintiff to prove that the reasons offered by his former employer are a pretext for discrimination.[4] *See Cichewicz v. UNOVA Indus. Auto. Sys., Inc.*, 92 F. App'x 215, 218–19 (6th Cir. 2004).

---

[3] Defendant assumes in its summary judgment motion that Zellner would argue that there is direct evidence of age discrimination. *See* Doc. 28, at 11-12. Zellner, however, makes no mention of direct evidence in her opposition; rather, she focuses her opposition on the establishment of a prima facie case. *See* Doc. 31, at 11.

[4] This tripartite burden-shifting process is often referred to as the *McDonnell Douglas* framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Case No. 1:11-CV-2796
Gwin, J.

*A. Prima Facie Case*

In its motion, Signature Health concedes that Zellner can satisfy the first two elements of the *prima facie* case. Signature Health argues instead that Zellner has not set forth sufficient facts to show that she was qualified for her position or that Signature Health treated similarly-situated, younger employees better. Each issue is addressed in turn.

*1. Qualified for the position*

At the prima facie stage, the Court must focus on Zellner's objective qualifications to determine whether she was qualified for her position. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575 (6th Cir. 2003) (en banc). Zellner may present credible evidence that her qualifications were "at least equivalent to the minimum objective criteria required for employment in the relevant field." *Id.* Such evidence may include her education, experience in the industry, and demonstrated possession of the required general skills.

Signature Health contends that Zellner violated requirements expressed in the employee handbook, and therefore fell below Signature Health's "legitimate expectations." *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990). This argument, however, collapses the analysis, for it conflates the "qualifications" prong of the prima facie case with the pretext prong of the *McDonnell Douglas* framework.

Zellner worked as an LPN with Defendant for almost seven years, and had worked in the nursing field for eleven years before that. [Doc. 27-1, at 36-37.] During her time with Defendant, Zellner received a number of positive employment reviews. The reviews from 2007, 2008, and 2009, almost universally acknowledge Zellner as "commendable," and have generally favorable comments. [Doc. 31-1.]

Case No. 1:11-CV-2796
Gwin, J.

In arguing that this Court should consider its firing justification in deciding whether Zellner was qualified, Signature Health, in turn, points this Court's attention to two unpublished Sixth Circuit cases that proscribe the use of positive employment reviews in establishing qualifications. *Webb v. ServiceMaster BSC LLC*, 438 F. App'x 451, 453 (6th Cir. 2011);[5/] *Strickland v. Fed. Exp. Corp.*, 45 F. App'x 421, 424 (6th Cir. 2002) (per curiam). Those cases have no binding authority, and even if they did, Zellner produces evidence in excess of performance reviews alone. She also produces the testimony of a patient's daughter, praising Zellner, as well as an affidavit from a coworker, Beth Johnson, that spoke of Signature Health unjustly "dogging" Zellner. [Doc. 31-10; doc. 43-1.]

This Court finds that Zellner—with her seven years of experience, multiple positive reviews, and accolades from coworkers and patients' families—has demonstrated that she was qualified for her position. The Court declines to place a more onerous burden upon her. *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008) ("Under this framework, the plaintiff bears the initial 'not onerous' burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence.") (quoting *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

2. *Replacement or differential treatment*

Signature Health next states that Zellner fails to produce evidence demonstrating that Signature Health either replaced Zellner with a younger worker or treated younger workers better. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992) ("[A] plaintiff can also make out

---

[5/]Moreover, prior precedential opinions from the Sixth Circuit do allow for the consideration of past performance. *See, e.g.*, *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009); *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 372 (6th Cir. 1999); *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1126 (6th Cir. 1998). As a prior panel's published opinion is binding on subsequent panels absent en banc review or intervening Supreme Court authority, *see* 6th Cir. R. 32.1(b), the import of *Webb* and *Strickland* is limited.

Case No. 1:11-CV-2796
Gwin, J.

a prima facie case by showing, in addition to the first three elements, that a comparable non-protected person was treated better.") (internal quotation marks omitted).

As a preliminary matter, Signature Health contends that Zellner is barred from raising the differential treatment claim when her OCRC and EEOC complaints referenced only the replacement worker charge. *See* Doc. 1-1, at 1 ("I believe I was fired due to consideration of my age, 53, because . . . I was replaced by a considerably younger individual."). In support, Signature Health points to *Randolph v. Ohio Department of Youth Services*, 453 F.3d 724 (6th Cir. 2006), a case in which the Sixth Circuit found the EEOC exhaustion requirement is not an inflexible one. *Id.* at 732 ("The requirement, however, is not meant to be overly rigid, nor should it result in the restriction of subsequent complaints based on procedural technicalities or the failure of the charges to contain the exact wording which might be required in a judicial pleading."). The only other case that Defendant cites in support of this proposition is *Scott v. Eastman Chemical Co.*, 275 F. App'x 466 (6th Cir. 2008). That case did hold that some of the plaintiff's claims were barred because they were not raised before the EEOC, but used a liberal standard to construe what was or was not previously raised. *Id.* at 471 ("Consequently, the EEOC complaint should be literally construed to encompass all claims reasonably expected to grow out of the charge of discrimination.") (citation omitted). The Sixth Circuit in *Scott* went on to say that "a plaintiff may fully exhaust her administrative remedies on a claim even if the claim was not actually investigated by the EEOC, *or specifically stated in the charge*." *Id.* (emphasis added). Here, the charge of wrongful termination due to age discrimination was plainly made in the EEOC complaint; that one of the underlying theories supporting that charge

Case No. 1:11-CV-2796
Gwin, J.

was omitted is not enough to bar Zellner from raising her claim in this Court.[6/]

To make a comparison between her treatment and that of another employee, Zellner must show that she was similarly-situated in all relevant aspects to the comparable worker. *See Parries v. Makino, Inc.*, 148 F. App'x 291, 296 (6th Cir. 2005). In determining whether the similarly situated requirement has been satisfied, the Court focuses on whether Zellner and the comparable: (1) were subject to the same standards; (2) engaged in misconduct of comparable seriousness; and (3) shared the same supervisor who ultimately determined what employment action would be taken. *See id.*; *Barry v. Noble Metal Processing, Inc.*, 276 F. App'x 477, 481 (6th Cir. 2008).

In opposing Defendant's motion, Zellner points to three younger comparable workers she says were treated differently. First, she points to Becky Gordon, a younger LPN with similar training and who also documented her time in thirty-minute increments. [Doc. 31, at 12; doc. 31-11.] Gordon's affidavit states that she was not criticized or punished for declining assignments, that she was trained by Defendant to bill in thirty-minute increments, that she did not receive discipline for documentation errors or omissions, that she routinely received verbal telephone orders from physicians, and that she was not disciplined when speaking up for herself. [Doc. 31-11.] Zellner next says that two other nurses in their thirties—Jessica Branham and Susan Shuler—were not disciplined for an error in setting up medication. [Doc. 31, at 14.] In support, Zellner points to an ambiguous portion of testimony from her former supervisor, Pat Long, that does not speak to whether Branham and Shuler deserved to be reprimanded. [Doc. 31-15, at 32-33.] She also submits

---

[6/]Zellner also appears to allege that Signature Health unlawfully harassed her because of her age. [Doc. 39, at 5.] To the extent that Zellner is making an ADEA hostile environment claim, that claim *is* foreclosed by the EEOC exhaustion requirement. Zellner failed to identify harassment as a source of discrimination on her complaint to the EEOC. [Doc. 1-1, at 1.] Evidence of harassment may, however, work to demonstrate that an employer's stated reason for termination is pretextual. *See Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 393 (6th Cir. 2009) ("We have held that discriminatory remarks, even by a nondecisionmaker, can serve as probative evidence of pretext.").

Case No. 1:11-CV-2796
Gwin, J.

the affidavit of Diana Fuller, the daughter of the patient in question, who states that her mother complained of an incorrect medications set up. [Doc. 31-10 ("She told me that she had taken the medications the way Ms. Schuler [had filled them . . . .").] The supporting statements in Fuller's affidavit, however, are hearsay and thus not considered. *See* Alpert v. United States, 481 F.3d 404, 409 (6th Cir. 2007) ("[A]n affidavit offered in opposition to summary judgment shall be made on personal knowledge . . . . Hearsay evidence must be disregarded.") (internal quotation marks, citations, and alterations omitted).

Signature Health takes issue with Gordon's affidavit, saying that it is based in conjecture and that the situations described are not the same. Further, Signature Health points to a number of technical distinctions between Gordon and Zellner's actions. But, the similarly situated comparable worker need not be *identical* to the plaintiff; rather, the plaintiff need only demonstrate that she "is similarly situated to the non-protected employee in *relevant* respects." Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 353 (6th Cir. 1998). Zellner has met this burden. The facts set forth by Zellner and Gordon, when viewed in a light most favorable to the non-moving party, suggest that Gordon was treated markedly differently than Zellner for similar infractions. Additionally, the admissible portions of Fuller's affidavit—that she was happy with Zellner's performance and had (her own) concerns about Branham and Shuler—speak to this issue as well.

Accordingly, Zellner has put forward sufficient evidence to create a genuine dispute at the *prima facie* stage of the Court's inquiry. This finding does not end the Court's analysis, however. The burden now shifts back to Signature Health to articulate a legitimate, non-discriminatory reason for the adverse action.

B. *Legitimate and non-discriminatory reason for termination*

Case No. 1:11-CV-2796
Gwin, J.

Signature Health insists that Zellner was terminated for failing to meet reasonable and legitimate performance expectations. According to Signature Health, Zellner comported herself unprofessionally, documented charts poorly or inaccurately, failed to maintain professional boundaries with patients, and failed to follow policies outlining patient updates. [Doc. 28-1, at 39.] Zellner does not challenge the non-discriminatory nature of Signature Health's stated reasons. The burden is therefore on Zellner to put forward evidence that Signature Health's stated reasons are a pretext for age discrimination.

*C. Pretext*

A plaintiff demonstrates pretext by showing either: "(1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate the discharge, or (3) that they were *insufficient* to motivate discharge." *Espitia v. Procter & Gamble Co.*, 93 F. App'x 707, 709 (6th Cir. 2004). Zellner need not prove pretext outright, but must instead present evidence that raises a genuine issue of material fact as to whether Signature Health's proferred explanation for the termination was merely pretextual. *Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 391 (6th Cir. 2009).

Zellner says that Signature Health's reasons are so unreasonable as to cast doubt on its actual motivations. Specifically, she says that an examination of Becky Gordon's record reveals age discrimination as the true reason for the termination. Gordon's affidavit reveals that she was not disciplined for "unprofessional behavior or insubordination when [she] spoke up for [herself] when [she] felt [she] was being unfairly treated" by Teresa Wilkins, the Director of Nursing. [Doc. 31-11.] This act occurred in September 2010—only a month after Zellner's termination.

Zellner also contends that Signature Health's charge of poor documentation rings false.

-10-

Case No. 1:11-CV-2796
Gwin, J.

Given Zellner's history of positive reviews (from Defendant and its patients), this Court agrees that a genuine issue of fact exists as to whether Zellner did engage in substandard documentation. Prior reviews stated that Zellner's "paperwork is exemplary," that she "goes above standard performance," that she "represents Signature well." [Doc. 31-1, at 1.] And although this review is in contrast with the next year's, which stated that Zellner needed to submit "more detailed documentation," the latter reviewer still considered Zellner "commendable." [Doc. 31-1, at 2.]

Under Signature Health's policy, Zellner was required to document time traveling between patients' homes. Zellner apparently failed to do this, and instead documented every patient visit as being thirty minutes in duration. Zellner contends, however, that other nurses also failed to document their time with patients correctly. She points to Gordon's claim that Gordon was not disciplined for billing her time in thirty-minute increments. [Doc. 31-11, at 2.] Signature Health responds by saying that "Gordon does *not* aver that she documented the same visit times for every patient; she does *not* aver that she failed to document travel time." [Doc. 28, at 10.] Effectively, then, Signature Health is saying that there are two possible interpretations of the statements contained in Gordon's testimony. A genuine issue of material fact therefore exists.

Further, the "medication set-up error" basis for the termination is an issue that at its core comes down to a credibility determination—and thus an issue for the jury. *See Fields v. Fairfield Cnty. Bd. of Developmental Disabilities*, 2012 WL 6051965, at *4 (6th Cir. Dec. 6, 2012) ("A jury, rather than a judge, is responsible for making credibility determinations, weighing the evidence, and drawing legitimate inferences from the facts."). Signature Health says that a patient's daughter called to complain about Teresa Wilkin's set-up of the patient's medications. [Doc. 28 at 5.] While investigating the inquiry, Pat Long apparently learned that Plaintiff Zellner "had provided the

-11-

Case No. 1:11-CV-2796
Gwin, J.

daughter with multiple points of misinformation," and that Wilkins had actually "rectified an error committed by Zellner." [*Id.*]

This is, quite plainly, a misrepresentation of Long's deposition testimony. As made clear in the opposition to Defendant's motion for summary judgment, Long *actually* said, "Karen, I believe—and I do not know. I can only speculate—contacted the daughter and got the daughter involved." [Doc. 31-15, at 91.] It is possible, however, that Signature Health relies on Long's affidavit, which states that the daughter "informed me that Zellner was the source of her misinformation." [Doc. 28-1, at 3.] Either way, there is a genuine dispute of material fact as to Zellner's involvement, as articulated by Long's own contradictory testimony.

Ultimately, in this case, whether a jury chooses to believe Zellner's or Signature Health's version of events depends on the credibility of each party's witnesses, and credibility determinations are for the jury to decide. The Court thus finds that a reasonable jury viewing the evidence as a whole could find that Signature Health's stated reasons for firing Zellner are factually untrue. Furthermore, because Gordon was not reprimanded for similar conduct, it is also a jury question whether Zellner's acts were sufficient to motivate the firing.

Accordingly, viewing the record in the light most favorable to Zellner, the Court finds that a genuine issue for trial exists as to whether Vitran's reasons for firing Zellner are based in fact or sufficient to warrant her firing.

**VI. Conclusion**

For the foregoing reasons, the Court **DENIES** Signature Health's partial motion for summary

Case No. 1:11-CV-2796
Gwin, J.

judgment. The case will proceed to trial on February 18, 2013, as previously assigned.

    IT IS SO ORDERED.


Dated: January 23, 2013                                                  s/       *James S. Gwin*
                                                                           JAMES S. GWIN
                                                                           UNITED STATES DISTRICT JUDGE